# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| J.E.B., by and through his parent and guardian, C.L.L., | Civil No. 06-3017 (JRT/FLN) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| INDEPENDENT SCHOOL DISTRICT NO. 720, *et al.*, | |
| Defendants. | |

Margaret O'Sullivan Kane, **KANE EDUCATION LAW, LLC**, 1654 Grand Avenue, Suite 200, St. Paul, MN 55105, for plaintiffs.

Susan E. Torgerson, **KENNEDY & GRAVEN, CHARTERED**, 200 South Sixth Street, Suite 470, Minneapolis, MN 55402, for the school district defendants.

Jeff M. Zalasky, **IVERSON REUVERS, LLC**, 9321 Ensign Avenue South, Bloomington, MN 55438, for the Scott County defendants.

Plaintiff J.E.B. is a 13-year-old boy who has been determined eligible for special education services. J.E.B. and his mother, C.L.L., appeal the decision from an Administrative Law Judge ("ALJ") who found that Independent School District No. 720 had provided J.E.B. with a free, appropriate public education in the least restrictive environment. Plaintiffs also allege multiple violations of federal and state law when defendants[1] denied residential placement for J.E.B.. Now before the Court are

---

[1] Defendants include Independent School District No. 720, Mary Romansky (Chair, Shakopee Board of Education), John McBroom (School District Superintendent), Kathy McKay

(Footnote continued on next page.)

defendants' motions to dismiss and the school district defendants' motion for judgment on the record.  For the reasons discussed below, the Court grants defendants' motions.

## BACKGROUND

Plaintiff J.E.B. lives with his mother, plaintiff C.L.L., in Shakopee, Minnesota. Defendant Independent School District No. 720 identified J.E.B. as a special needs student when he was in kindergarten, and he was placed in a special education setting. By the first grade, the school district had moved J.E.B. into a highly restrictive Level V Emotional Behavioral Disorders setting at Minnesota River Valley Special Education Cooperative,[2] where he remained through nearly his entire fifth grade year.  In the sixth grade, the school district placed J.E.B. in the Ascent Program, which is a Level V special education placement school in the Shakopee Public School System.  The district placed J.E.B. in the Ascent Program after a reassessment of J.E.B.

C.L.L. requested residential placement for J.E.B..  C.L.L. was told that no educational reason justified residential placement for J.E.B. as his behavioral issues could be addressed in a juvenile facility.  C.L.L. requested a statutory due process hearing pursuant to the Individuals with Disabilities Education Act ("IDEA").  *See* 20 U.S.C. §§ 1400-1409.  After a three-day hearing in April 2006, an ALJ concluded J.E.B.'s

_____

(Footnote continued.)

(Special Education Director), and Shakopee Public Schools (collectively "school district defendants"); and Scott County Board, John Ulrich (Chair, Scott County Human Services), Steve Brown (Supervisor of Children's Mental Health Division), and Christina Scalzo (Scott County Children's Mental Health Case Manager) (collectively "Scott County defendants").

[2] On January 22, 2007, defendants Minnesota River Valley Special Education Cooperative, Lezlie Prettyman Olson (Director of the Cooperative), and Susan Bruns (Chair of the Cooperative) were dismissed from this action.

behavioral issues were separate and distinct from his educational needs, and that residential placement was not warranted.

## ANALYSIS

## I.   MOTION FOR JUDGMENT ON THE RECORD

Plaintiffs appeal the ALJ's denial of their request for a residential placement. Under the IDEA, a party may seek review of an administrative decision by bringing an action in federal district court.  20 U.S.C. § 1415(i)(2)(A).  The school district defendants have filed a motion for judgment on the record.

The Court must review the administrative proceedings and determine whether the preponderance of the evidence shows the school district complied with the requirements of IDEA.  *Slama v. Indep. Sch. Dist. No. 2580*, 259 F. Supp. 2d 880, 882 (D. Minn. 2003).   Although this is "a less deferential standard of review than the substantial evidence test common to federal administrative law[,] . . . it still requires the reviewing court to give 'due weight' to agency decision-making."  *Id.*  The Court may make a decision on the merits, even if there exist, upon the stipulated record, disputed issues of material fact.  *Id.*   The party challenging the decision has the burden of proof.  *E.S. v. Indep. Sch. Dist. No. 196*, 135 F.3d 566, 569 (8th Cir. 1998).

### A.   Educational Benefit Received From The School District's Approach

Plaintiffs' primary argument is that the preponderance of evidence does not support the ALJ's conclusion that the school district complied with the IDEA.  The IDEA requires that the school district provide a free, appropriate public education ("FAPE"). "[T]he requirements of the IDEA are satisfied when a school district provides

individualized education and services sufficient to provide disabled children with 'some educational benefit.'" *Neosho R V Sch. Dist. v. Clark*, 315 F.3d 1022, 1027 (8th Cir. 2003). The ALJ concluded that the district's programs were appropriate and that J.E.B. did not require residential placement to receive some educational benefit. Specifically, the ALJ's determined that the school district provided J.E.B. with FAPE in the least restrictive environment during the period of September 2004 to February 2006. This period covers one-and-a-half school years – J.E.B.'s sixth and seventh grade years.

Plaintiffs first criticize the ALJ's reliance upon the testimony of teachers. Plaintiffs argue that teachers are biased and would not want to admit that they are failing some students. Even if teachers are biased in this respect, the Court concludes that the ALJ did not err in relying on the testimony of teachers. *See Sch. Bd. of Indep. Sch. Dist. No. 11 v. Renollett*, 440 F.3d 1007, 1012 (8th Cir. 2006) (relying on the testimony of teachers to conclude that the school district provided the student with meaningful educational benefit). Teachers are well suited to testify about the progress of a student.

Plaintiffs next argue that the record shows that J.E.B. made no measurable gains during the time period at issue. The individualized education plan ("IEP")[3] had five goals. Plaintiffs focus on progress made toward the reading goal. The ALJ concluded that J.E.B. progressed one grade level in reading. In November 2004, teachers testified that J.E.B. was at a first grade reading level with 90 percent comprehension. In January 2005, J.E.B. was able to read second grade material with 88 percent accuracy with adult assistance. In March 2005, J.E.B. was able to read a second grade novel at 75 percent

---

[3] As part of providing FAPE under the IDEA, a school must formulate an IEP tailored to the disabled child's unique needs. 20 U.S.C. § 1412(a)(4).

accuracy.  Plaintiffs argue that because one of the performance markers was judged "with adult assistance" there is no way to assess if J.E.B. was really progressing.  Plaintiffs further argue that the drop from 88 to 75 percent accuracy shows that there was no progress toward the reading goal.  The Court disagrees that the evidence shows no progress toward the reading goal.  The ALJ appropriately reasoned that the fall in accuracy could have resulted from different difficulties in reading material.

Furthermore, plaintiffs cannot dispute the clear progress made towards other IEP goals, such as spelling and math.  The ALJ concluded that progress was made toward each goal.  For example, the record shows that J.E.B. went from refusing to do spelling at all, to averaging 93 out of 100 on his spelling tests.  Overall the evidence shows that J.E.B. was making some progress toward each goal, even if that progress was not great.  *See In re Conklin*, 946 F.2d 306, 316 (4th Cir. 1991) (explaining that progress must be judged in the context of a student's disabilities).  J.E.B.'s primary disability is an emotional behavioral disorder, which means that he exhibits behavior that interferes with his learning.  Importantly, the record shows that J.E.B. made significant behavioral progress during the 15 months in the school district's programs.

Finally, plaintiffs argue that the ALJ erred by finding that C.L.L. failed to provide a report from an outside agency ("the Fraser report") until January 2006.  Plaintiffs argue that the Fraser report was provided the previous year and that it should have been used to modify the IEP.  Plaintiffs assert that the Fraser report was provided in January 2005 or on February 8, 2005.  The ALJ reasonably concluded that plaintiffs' explanation was not credible because the Fraser report was not prepared until late February 2005 and because several school district personnel testified that they received the Fraser report in January

2006.  The ALJ did not err by finding the testimony of the school district more credible than the testimony of plaintiffs.

The task of the school district under the IDEA is to serve disabled students in the least restrictive setting possible.  *See* 20 U.S.C. § 1412(a)(5)(A).  Residential placement is very restrictive, and the school district must provide residential placement only if "necessary to provide special education and related services."  34 C.F.R. § 300.104.  The record contains no testimony that residential placement of J.E.B. was necessary for his education.  Rather, the record reflects that J.E.B. made educational progress in the programs provided by the school district.  When a student makes educational progress in a day program, removal from the home and placement in a residential facility is neither necessary nor appropriate.

### B.    Necessary Parties To The Administrative Proceeding

Plaintiffs also argue that the ALJ erred in dismissing Scott County Social Services from the administrative hearing.  Plaintiffs rely on statutory language that speaks to the joint responsibility of county boards and school boards to coordinate, provide, and pay for services for children with disabilities.  *See* Minn. Stat. § 125A.29(a); Minn. Stat. § 125A.027, subd. 4.  Plaintiffs argue that the failure to join the Scott County agency resulted in the school district and the county in escaping their responsibilities to work cooperatively to provide services for J.E.B.

In justifying his refusal to join Scott County Social Services, the ALJ relied upon Minn. Stat. § 125A.091, subd. 18.  The statute provides that the hearing officer has the responsibility of "determining the responsible and providing districts and joining those

districts, if not already notified, in the proceedings." Minn. Stat. § 125A.091, subd. 18(b)(4). Based on this statute, the ALJ concluded that he did not have the authority to join the county agency because his authority was limited to joining school districts. However, a different ALJ relied on the statutes that discuss interagency coordination and reached the opposite conclusion. *See In the Matter of the Student v. Janesville-Waldorf-Pemberton*, MDE File No. 660 (Interim Order April 2006). That ALJ held that "[t]he statute and rule clearly contemplate and authorize the inclusion of a county agency in this due process hearing procedure when necessary." *Id.*

Even assuming that the ALJ had the authority to join Scott County Social Services, the Court concludes that the exclusion of the agency does not provide justification for reversing the ALJ's decision. The evidence does not show that Scott County Social Services was a necessary party. Indeed, the Court cannot conclude that the process would have been any different if the agency had been included.

In sum, the preponderance of the evidence shows the school district complied with the requirements of IDEA. As such, the Court grants the school district defendants' motion for judgment on the record.

## III.   MOTIONS TO DISMISS

### A.   Standard of Review

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to plaintiff, as the non-moving party. *See, e.g.*, *Bhd. of Maint. of Way Employees. v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001). A motion

to dismiss a complaint should not be granted unless it appears beyond a doubt that plaintiff can prove no set of facts that would entitle plaintiff to relief. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).

### B.     The IDEA Claims

Count Three of plaintiffs' complaint alleges that the defendants violated the IDEA by denying J.E.B. "access to the essential mental heath and education programming," "through the repeated charges, arrests and detainments for behavior," and the "routine use of aversive procedures."   (Am. Compl. ¶ 91.)   The complaint further alleges that defendants failed to ensure that J.E.B. was provided with FAPE.

As explained above in the context of the school district defendants' motion for judgment on the record, the Court agrees with the ALJ's determination that the school district complied with the IDEA by providing J.E.B. with FAPE.  Claims that the school district defendants violated the IDEA for failing to provide FAPE are therefore dismissed.  Because the IDEA requires exhaustion of administrative remedies, the Court does not have jurisdiction over any other claims under the IDEA that plaintiffs could have brought before the ALJ but did not.[4]  *See* 20 U.S.C. § 1415(i)(2)(A); *Blackmon v. Springfield R-XII Sch. Dist.*, 198 F.3d 648, 655-56 (8th Cir. 1999).

---

[4] Plaintiffs' complaint largely fails to distinguish between the various defendants and fails to articulate specific facts underlying the claims, so it is difficult to assess plaintiffs' compliance with the IDEA's exhaustion requirements.  However, it is clear that the only issues that plaintiffs raised in the hearing before the ALJ were the school district defendants' provision of FAPE between September 1, 2004 and February 26, 2006.  Any IDEA claims that arose before or after these dates have not been exhausted and are not properly before the Court.

As for plaintiffs' allegations that the Scott County defendants violated the IDEA, the Court concludes that these allegations are similarly without merit because the IDEA does not apply to counties.  The IDEA excludes general and punitive damages, and allows only compensational educational services, which only the school district and not the county can provide.  *See Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 856 (8th Cir. 2000).  Plaintiffs concede that the IDEA does not apply to counties but instead point to parallel state statutes that require interagency coordination.  *See* Minn. Stat. §§ 125A.023, 125A.027, and 245.4873.  Minnesota adopted the IDEA by statutorily making school districts responsible for providing disabled children with appropriate education.  Minn. Stat. § 125A.08.  The statutes relied upon by plaintiffs do not give counties authority over educational placements.  Rather, the statutes require coordination so that families with disabled children will have access to appropriate non-educational services.

### C.   Constitutional Claims and Discrimination Claims Under the ADA, the Rehabilitation Act ("Section 504"), and the MHRA

The IDEA's exhaustion requirement also extends to FAPE-related claims brought under the United States Constitution or federal disability statutes.  *See* 20 U.S.C. § 1415(l).  If plaintiff failed to exhaust these claims, then the Court has no jurisdiction to consider them.[5]  The Court can only consider wholly separate non-FAPE claims to which the exhaustion requirement does not apply.

---

[5] As for the FAPE-related claims based on other laws that were exhausted, these must also be decided in favor of the school district defendants because, as discussed above, the Court concludes that the school district complied with the IDEA in its provision of FAPE.  *See Indep. Sch. Dist. No. 283 v. S.D.*, 88 F.3d 556, 562 (8th Cir. 1996) (explaining that resolution of the IDEA claims precluded several other similar claims based on federal and state laws).

The Court cannot consider the constitutional claims asserted against the school district defendants because the claims are not wholly separate from the FAPE claims. Rather, these claims involve facts based on the school district defendants' provision of special education services and therefore should have been exhausted. The claims are based on plaintiffs' "interests in a free, public school education" and an alleged denial of "access to mental health services," and use of "aversive procedures" resulting in illegal seizures. (Am. Compl. ¶ 74.) Plaintiffs fail to point to any specific allegations in the complaint establishing that the other federal claims are factually distinct from those asserted under the IDEA.[6] The constitutional claims against the school district defendants must therefore be dismissed. The Section 504, ADA, and MHRA discrimination claims against the school district defendants are based upon the same denials of educational programming and alleged use of aversive procedures, and must be similarly dismissed.

Plaintiffs' constitutional claims against the Scott County defendants are premised upon a claim of unreasonable search and seizure.[7] Plaintiffs allege that the Scott County defendants placed J.E.B. in a juvenile correctional facility without due process, denied

---

[6] That an alleged denial of a free, public school education involves the provision of FAPE is self-evident. As for the use of aversive procedures, even if the Court were to conclude that these allegations were not educational in nature and could be considered, plaintiffs do not coherently explain how the actions of the school district defendants illegally seized JEB. For example, there are no allegations that the school district defendants held JEB against his will or denied him the opportunity to leave school. These claims fail as a matter of law.

[7] The Complaint also asserts that defendants violated the United States Constitution by denying his right to integrity of the family unit and right to privacy. As discussed below, the Court concludes that the complaint insufficiently alleges violations of state law for loss of familial association and invasion of privacy. Similarly, the allegations are insufficient to support the constitutional claims.

him necessary mental health services and residential placement, and initiated a false child in need of protective services ("CHIPS") petition.   The alleged false statement in the CHIPS petition is that C.L.L. supported the CHIPS petition when she did not.   Plaintiffs offer few facts surrounding the detainment in the juvenile correctional facility, and provide no facts as to the actions that precipitated the detainment.   Without more detail, these allegations cannot constitute unreasonable seizure.   The allegations that the Scott County defendants initiated a CHIPS proceeding cannot constitute a Fourth Amendment violation, especially given that the defendants voluntarily dropped the proceeding. Indeed, plaintiffs do not articulate how any of the alleged acts of the Scott County defendants could give rise to a constitutional violation.   The Court concludes that the allegations supporting the constitutional claims against the Scott County defendants are insufficient to state a claim.

Plaintiffs' section 504, ADA, and MHRA discrimination claims against the Scott County district defendants are based upon the same allegations as the constitutional claims.   Allegations of bad faith or an exercise of gross misjudgment are required to state a claim under section 504 or the ADA.   *See Thompson by & Through Buckhanon v. Board of the Special Sch. Dist. No. 1*, 144 F.3d 574, 580 (8th Cir. 1998).   Plaintiffs do not allege that bad faith motivated any of the alleged actions, and the denials of residential placement merely establish a professional disagreement over the appropriate program, not gross misjudgment.   *See Smith by & Through Townsend v. Special Sch. Dist., No. 1*, 184 F.3d 764, 769 (8th Cir. 1999).   Moreover, there is no specific allegation that the CHIPS proceeding was applied in a discriminatory fashion.   For example, plaintiffs do not allege that the Scott County defendants failed to initiate proceedings against similarly

situated non-disabled children.  The Court therefore grants the Scott County defendants'
motion to dismiss the discrimination claims.

### D.        Various Conspiracy Claims

Plaintiffs allege that defendants conspired to violate plaintiffs' constitutional and
federal statutory rights.   In essence, plaintiffs allege that these violations occurred
because defendants failed to make a residential placement for J.E.B. and because the
Scott County defendants utilized an allegedly false CHIPS petition to avoid residential
placement.   The Court concludes that plaintiffs have not identified any agreement
between the defendants that could support the conspiracy claims.  *See Williams-Bey v.
Kempker*, 192 Fed. Appx. 569, 571 (8th Cir. 2006) (explaining that a meeting of the
minds is necessary to support a viable conspiracy claim).  Plaintiffs point the Court to
allegations in the complaint that both the Scott County defendants and school district
defendants denied J.E.B. the residential placement that plaintiffs desired.  Even if true,
these allegations do not show that defendants entered into an agreement specifically
aimed at depriving plaintiffs of their rights.[8]

---

[8] Count Two of the complaint alleges violations of 42 U.S.C. § 1983 based upon alleged
violations of the Constitution, IDEA, section 504, and the ADA.  Section 1983 provides a federal
cause of action for plaintiffs to sue officials acting under color of state law for alleged
deprivations of "rights, privileges, or immunities secured by the Constitution and laws" of the
United States.  42 U.S.C. § 1983; *see Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010-1011
(8th Cir. 1999).  Because the Court concludes that plaintiffs have not been deprived of any rights
secured by the Constitution or federal law, plaintiffs cannot succeed on their § 1983 claims.

### E.    Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, plaintiffs must allege conduct that was extreme and outrageous, was intentional or reckless, and caused severe emotional distress. *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-439 (Minn. 1983).   Counts consider conduct extreme and outrageous only if it passes the "boundaries of decency and is utterly intolerable to the civilized community." *Id.* Plaintiffs allege that defendants' "unreasonable and unlawful denials of mental health and education services, seizures, invasions and confinement without due process . . . were extreme and outrageous."   (Am. Comp. ¶ 115.)   The professional determination that residential placement of J.E.B. was not warranted does not rise to the level of extreme and outrageous conduct, and the allegations of seizures, invasions, and confinement are too vague to support a claim.   Moreover, plaintiffs' complaint is void of any facts supporting a theory that J.E.B. suffered extreme emotional distress.   Plaintiffs' claims of intentional infliction of emotional distress must therefore fail.   Plaintiffs specifically waived their claims of negligent infliction of emotional distress (Count Eight) and negligent hiring, training, and supervision (Count Nine).[9]

---

[9] Although the complaint does not appear to the Court to contain a claim for false imprisonment against the Scott County defendants, the parties nevertheless brief it.  To the extent that plaintiffs are asserting a claim of false imprisonment, the Court concludes that it is without merit.  Plaintiffs do not sufficiently allege that the detainment was unwarranted under the circumstances.

### F.     Loss of Familial Association

Count Seven of the complaint alleges that defendants violated plaintiffs' right to familial association.  "A defendant can be held liable for violating a right of intimate association only if the plaintiff shows an intent to interfere with the relationship." *Reasonover v. St. Louis County*, 447 F.3d 569, 585 (8th Cir. 2006).  Nowhere in the complaint do the plaintiffs allege that defendants acted with the necessary intent to interfere with their familial relationship.  The claims are therefore dismissed.

### G.     Invasion of Privacy

It appears that plaintiffs are alleging claims of intrusion upon seclusion, which is one of three causes of action recognized in Minnesota under the tort of invasion of privacy.  *See Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 236 (Minn. 1998). "Intrusion upon seclusion occurs when one intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person."  *Id.* at 233.  The claims lack any specific factual basis, and do not include allegations that the alleged intrusion was "highly offensive."  *See id.*  The Court dismisses the claims of invasion of privacy.

## IV.    CONCLUSION

The Court agrees with the determination of the ALJ that the school district defendants complied with the IDEA in their provision of educational services to J.E.B. As for plaintiffs' other allegations against the Scott County and school district defendants, the Court concludes that they are insufficient to state claims under federal and state law.  Because the Court concludes that no violations of law occurred, the Court

need not reach the immunity issues.   In sum, the Court grants the motion for judgment on the record filed by the school district defendants, the motion to dismiss filed by the school district defendants, and the motion to dismiss filed by the Scott County defendants.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     The Scott County defendants' motion to dismiss [Docket No. 35] is **GRANTED**.

2.     The school district defendants' motion to dismiss [Docket No. 42] is **GRANTED**.

3.     The school district defendants' motion for judgment on the record [Docket No. 47] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:    May 24, 2007                          _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                          JOHN R. TUNHEIM
                                                    United States District Judge